UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Mike Makuraza

     v.

David Wesling, et al.

Case No. 1:26-cv-122-JL-AJ
Opinion No. 2026 DNH 042


**ORDER ON PETITIONER'S MOTION FOR IMMEDIATE RELEASE**


Petitioner Mike Makuraza seeks immediate release from his ongoing immigration detention after an Immigration Judge denied his release in a custody redetermination (bond) hearing. Makuraza's criminal history includes criminal charges of operating a vehicle under the influence of alcohol and driving to endanger in 2022. At a March 9, 2026 bond hearing, the IJ found, based on his criminal history, that he was a danger to the community. Makuraza now challenges the constitutional sufficiency of the bond hearing under the Due Process Clause of the 14th Amendment to the Constitution. Respondents argue that the IJ's determination was constitutionally sufficient, that this court lacks jurisdiction to review the IJ's order under 8 U.S.C. § 1226(e), and that the petitioner has failed to exhaust his administrative remedies by appealing the IJ's decision to the BIA.

Having reviewed the parties' briefing and held oral argument, the court finds that § 1226(e) does not preclude review of the IJ's decision for constitutional sufficiency, nor was the petitioner required to exhaust his administrative remedies, but that the IJ did not violate Makuraza's due process rights when she found by clear and convincing evidence that he was a danger to the community.

## I.    Background

Makuraza, a Burundian national, entered the United States in 2016 on an F1 student visa.[1]  Later that year, the University of North Carolina canceled his student status, but he remained in the United States and applied for asylum in early 2017.[2]  He is married to a U.S. citizen and has a pending Form I-130, Petition for Alien Relative.[3]  He lives in Maine.

In 2022, Makuraza was arrested and charged with operating a vehicle under the influence of alcohol and driving to endanger in Cumberland County, Maine.  He eventually pled guilty to one count of driving to endanger.[4]  The Superior Court suspended his license for 30 days and ordered him to pay a fine of $730.[5]

ICE detained Makuraza on February 14, 2026.[6]  He filed a petition for writ of habeas corpus with this court, but received a bond hearing with an IJ without the court's intervention on March 9.  At the hearing, DHS submitted as evidence Makuraza's criminal history, which included police reports and court records.[7]  During the hearing, counsel for DHS argued that Makuraza was a danger to the community based on his driving under the influence of alcohol and his guilty plea.[8]  Counsel for Makuraza made several arguments against a finding of dangerousness.  She argued that the driving

---

[1] Pet. Writ Habeas Corpus (doc. no. 1) at 2.
[2] *Id.*; Resp'ts' Opp. (doc. no. 13) at 2.
[3] Pet. Writ Habeas Corpus (doc. no. 1) at 2.
[4] IJ Order, Ex. H (doc. no. 9-3) at 41.
[5] *Id.*
[6] Pet. Writ Habeas Corpus (doc. no. 1) at 2.
[7] IJ Order, Ex. H (doc. no. 9-3) at 15-41.
[8] Bond Hr'g Tr. (doc. no. 9-2) at 4.  DHS also argued that Makuraza was a flight risk, but the IJ made no finding on that issue.

offense took place several years ago, when he was under severe emotional stress from his mother being admitted to the ICU, and that he has taken the incident very seriously, attending the classes he was required to take, paying the fine, and being careful not to drink excessively or drive after consuming alcohol.  She noted that he has not offended again.  Without any further argument from DHS, the IJ found that Makuraza "[had] been shown to be a danger to the community by clear and convincing evidence based on the criminal history."[9]  The petitioner filed a status report with the court, requesting immediate release.[10]  The respondents objected.[11]

## II.    Jurisdiction

This court may grant a writ of habeas corpus to a person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  Although 8 U.S.C. § 1226(e) provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole," the respondents concede that this court may review an IJ's decision to deny bond to determine "whether the petitioner received the constitutional due process to which he was entitled."[12]

Makuraza challenges the constitutional sufficiency of the bond hearing, arguing that the IJ violated his due process rights by failing to apply the proper standard of proof,

---

[9] *Id*. at 7.
[10] Pet. Mot. Release (doc. no. 9).
[11] Resp'ts' Opp. (doc. no. 13).
[12] *Id*. at 3 (citing *Massingue v. Streeter*, No. 3:19-cv-30159-KAR, 2020 WL 1866255, at *4 (D. Mass. Apr. 14, 2020)).

and that the evidence before the IJ was insufficient, as a matter of law, to support a finding by clear and convincing evidence that he was a danger to the community, as required by *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021). Based on the respondents' concession, this court joins others in finding that "[a]lthough the court may not review the IJ's discretionary judgment, the IJ does not have discretion to fail to apply the burden of proof that due process requires." *See Mayancela Mayancela v. FCI Berlin, Warden*, No. 25-CV-348-LM-TSM, 2025 WL 3215638 at *5 (D.N.H. Nov. 18, 2025) (McCafferty, J.); *see also Massingue*, 2020 WL 1866255 at *4; *Dos Reis v. Vitello*, No. CV 25-10497-RGS, 2025 WL 1043434 at *2 (D. Mass. Apr. 8, 2025).

### III. Administrative exhaustion

"There are two species of exhaustion: statutory and common-law. The former deprives a federal court of jurisdiction, while the latter 'cedes discretion to a [federal] court to decline the exercise of jurisdiction.'" *Brito v. Garland*, 22 F.4th 240, 255 (1st Cir. 2021) (quoting *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 174–76 (1st Cir. 2016). Since no statute requires exhaustion, "sound judicial discretion governs." *Morgan v. Garland,* 120 F.4th 913, 927 (1st Cir. 2024) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). In making the decision, the court "must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *Anversa*, 835 F.3d at 176 (quoting *McCarthy*, 503 U.S. at 146). "[I]f the situation is such that 'a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim,' exhaustion may be excused even though 'the administrative decisionmaking

4

schedule is otherwise reasonable and definite.'" *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997) (citing *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992).

Petitioner's case warrants waiver of exhaustion under that standard. The petitioner is suffering irreparable harm in the form of loss of liberty while detained. *Brito v. Garland*, 22 F.4th 240, 256 (1st Cir. 2021) ("[E]xhaustion might not be required if [the petitioner] were challenging her incarceration ... or the ongoing deprivation of some other liberty interest." (quoting *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986))). Petitioner points out that BIA bond appeals currently exceed 200 days, longer than the presumptively reasonable six-month detention established by *Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001). Considering the potential length of detention for an appeal of the IJ's finding of dangerousness, which based on an offense for which the Cumberland County Superior Court awarded no jail time, the court finds that the petitioner is not required to exhaust his administrative remedies in this case.

## IV.    Analysis

Although this court has authority to consider Makuraza's claim, that authority is "limited." *Mayancela Mayancela,* 2025 WL 3215638 at *5 (citing *Diaz Ortiz v. Smith*, 384 F. Supp. 3d 140, 143 (D. Mass. 2019)). "To obtain habeas relief, a petitioner must show that the IJ failed to place the burden of proof on the government to show dangerousness by clear and convincing evidence by 'either point[ing] to the language of the [IJ's] opinion or demonstrate[ing] that 'the evidence itself could not – as a matter of law – have supported' the [IJ's] decision to deny bond.' " *Id.* Although "IJs generally must sufficiently explain their reasoning to permit appellate or judicial review of their

decisions… an IJ 'need not spell out every last detail of [her] reasoning where the logical underpinnings are clear from the record.' " *Id*. at 6 (citing *Barnica-Lopez v. Garland*, 59 F.4th 520, 530 (1st Cir. 2023) and *López-Gómez v. Bondi*, 154 F.4th 1, 4 (1st Cir. 2025)).

Makuraza has not made this showing. He has two essential arguments. First, he argues that at the hearing, the IJ failed to place the burden on the government and to articulate a non-conclusory basis for her decision. Second, he argues that his criminal history could not, as a matter of law, support a finding of dangerousness by clear and convincing evidence.[13] The IJ issued her decision orally at the end of the bond hearing, and the record contains no written memorandum of decision by the IJ. Accordingly, the court bases its analysis on the audio recording and transcript of the bond hearing.[14]

***Language of the decision.*** The IJ did not specify that the government bore the burden of proof at the hearing, but began the merits portion of the hearing by asking DHS for its substantive argument.[15] After argument by both sides addressing the issue of dangerousness, the IJ stated that "[Makuraza] has been shown to be a danger to the community by clear and convincing evidence based on the criminal history."[16] The court

---

[13] Makuraza also argues that the IJ's failure to consider alternatives to detention or other less restrictive means to address the risk of danger posed by the petitioner to the community was constitutionally deficient. He points to *Brito v. Garland*, in which the First Circuit Court of Appeals noted that "[i]f due process requires an IJ to consider alternatives to detention before making a determination about dangerousness or risk of flight, the IJs in the petitioners' cases might well have reached different decisions as to whether to release the petitioners on bond." 22 F.4th at 255. The First Circuit did not reach the question of whether due process requires an IJ to consider alternatives to detention in a bond hearing. The court declines to hold that such a requirement exists without binding authority or more affirmative appellate guidance.

[14] Doc. nos. 9-1 and 9-2.

[15] Bond Hr'g Tr. (doc. no. 9-2) at 4.

[16] *Id*. at 7.

recognizes that this language barely goes beyond a recitation of the standard, but under the facts and circumstances present here, it is sufficient to show that she based her decision on the petitioner's criminal history. *See Mayancela Mayancela*, 2025 WL 3215638 at *6 ("The logical underpinnings of the IJ's reasoning are clear from her written memorandum of decision."). With the criminal record in evidence, including the police reports and the petitioner's plea, the IJ heard arguments from both parties about the relative weight to assign the evidence. Based on this record and her mention of the criminal record, it is not impossible to determine the basis for her decision. *Id.*

*Evidence as a matter of law*. The petitioner argues that, as a matter of law, his criminal history cannot prove that he is a danger by clear and convincing evidence. The court disagrees. The petitioner points to factors from *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006) that IJs should consider in a bond determination. The factors addressing dangerousness include "the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *Id.* While some courts may have weighed the evidence available to the IJ differently or reached a different conclusion, a relatively recent incident of driving under the influence of alcohol—falling asleep inside a running car at a gas station with a blood alcohol content of .29—could support a finding that the petitioner was a danger to the community by clear and convincing evidence, especially when confirmed by a criminal conviction for the offense of "driving to *endanger*."[17] Makuraza emphasizes that the IJ failed to

---

[17] IJ Order, Ex. H (doc. no. 9-3) at 15-41 (emphasis added).

consider the petitioner's rehabilitation and the length of the sentence served for the criminal conviction (or lack thereof).  But "an immigration judge 'can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Diaz Ortiz*, 384 F. Supp. 3d at 144 (quoting *NRLB v. Beverly Enters.-Mass., Inc.*, 174 F.3d 13, 26 (1st Cir. 1999)).  The petitioner provides no binding authority showing that the petitioner's criminal conviction cannot, as a matter of law, meet the clear and convincing standard for dangerousness to the community.  Ultimately, he disagrees with the IJ's weighing of the evidence before her, which this court has no jurisdiction to review.  *Id.*

## V.   Conclusion

Because the petitioner has not demonstrated that the IJ failed to apply the constitutional standard in her bond determination, the court denies the petitioner's motion for immediate release.[18]

SO ORDERED.

Joseph N. Laplante
United States District Judge

Dated: April 20, 2026
cc: Counsel of record

---

[18] Doc. no. 9.